1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| INTERNATIONAL INTELLECTUAL MANAGEMENT CORPORATION, a California corporation, | Case No. CV 08-7587 R (JWJx) |
| Plaintiff, | **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |
| vs. | **DATE:     October 19, 2009** <br> **TIME:     10:00 a.m.** <br> **CTRM:   8** |
| LEE YUNN ENTERPRISES, INC. (U.S.A.), a California corporation; et al., | **Hon. Manuel L. Real** |
| Defendants. | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CHRISTIE, PARKER & HALE, LLP

Having read and considered the papers, arguments, and evidence presented by the parties with respect to the Motion for Summary Judgment filed by Defendants, the Court finds that the following facts are undisputed and makes the following conclusions of law:

**MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE**

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 1.      Plaintiff is the assignee of three patents: U.S. Patent Nos. 6,647,601 (the "'601 Patent"); 6,837,278 (the "'278 Patent"); and 6,926,044 (the "'044 Patent") (collectively, the "patents in suit"). | First Amended Complaint ("FAC") ¶¶ 23-26 and Exs. A-C; Declaration of Brian K. Brookey ("Brookey Decl.") Exs. A-F. |
| 2.      The patents contain two types of claims: method claims (independent and dependent) for manufacturing blankets; and product-by-process claims with respect to the blankets themselves. | FAC Exs. A-C; Brookey Decl. Exs. A-C. |
| 3.      Plaintiff has offered no evidence that any of the accused products infringe any of the claims of the patents in suit. | Brookey Decl. Exs. G-I. |
| 4.      Plaintiff has offered no evidence that any defendant used the methods claimed in the patents in suit. | Brookey Decl. Exs. G-I. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 5.      Claim 1 of the '601 Patent claims a method for making a fabric that includes, among other things, the step of "weaving the fabric." | Brookey Decl. Ex. A. |
| 6.      Claims 2 through 6 of the '601 Patent are dependent claims and thus also must require weaving. | Brookey Decl. Ex. A. |
| 7.      Claim 7 of the '601 Patent is a product-by-process claim that requires "weaving the fabric," and Claims 8 through 11 depend from it. | Brookey Decl. Ex. A. |
| 8.      Claim 12 of the '601 Patent is a method claim requiring "weaving the fabric," and Claims 13 through 16 depend from it. | Brookey Decl. Ex. A. |
| 9.      Claim 17 of the '601 Patent is a product-by-process claim for a blanket made according the method of Claim 12. | Brookey Decl. Ex. A. |
| 10.     The '278 patent contains method and product-by-process claims, all of which, as in the '601 Patent, require the step of "weaving" fabric. | '278 Patent, Claims 1-11, 13, 15-16 (method claims); Claims 12, 14 (product-by-process claims) (Brookey Decl. Ex. B). |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 11.  The term "weave" is defined as follows: "To make (cloth) by interlacing the threads of the weft and the warp on a loom...To interlace (threads, for example) into cloth...To construct by interlacing or interweaving strips or strands of material." | The American Heritage Dictionary of the English Language, 4th ed. 2009 (Brookey Decl. Ex. J). |
| 12.  It is well known to those of ordinary skill in the art that "weaving" refers to a specific Standard Industrial Classification (SIC) designation for creating fabric that differs from other processes for creating fabric, such as knitting. | Declaration of Gerald M. Varley ("Varley Decl.") ¶ 7. |
| 13.  Weaving involves distinct mechanical principals, particular machinery, and particular training and skills that are unrelated to other methods of fabric manufacturing. | Varley Decl. ¶ 7. |
| 14.  Woven fabrics are composed of warp (vertical) yarns and weft (horizontal yarns) that are interlaced at right angles to each other on a loom. | Varley Decl. ¶ 9 and Ex. B. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 15.     Piles may be inserted in the spaces between the warps and wefts of woven fabrics to create plusher fabrics. A pile yarn is wound around a ground yarn by one or more turns. | Varley Decl. ¶ 9. |
| 16.     Weaving results in a specific structural configuration. | Varley Decl. Ex. B. |
| 17.     This configuration described in ¶¶ 14-16 is what is described by the '601 Patent's and the '278 Patent's specifications when they discuss weaving, and it is the structure shown in the patents' figures. | *See, e.g.*, '601 Patent at col 1. lns. 36-44 and at Figs. 4-5; '278 Patent at col. 2 lns. 1-5 and at Fig. 12. |
| 18.     The '044 Patent claims priority from and is a continuation of the '278 Patent, which claims priority from and is a continuation-in-part of the '601 Patent.  The '044 Patent also claims priority and is a continuation of the '601 Patent. | Brookey Decl. Exs. A-C. |
| 19.     All of the '044 Patent's claims were added during prosecution of the '044 Patent and therefore were not themselves present in either parent application. | Brookey Decl. Ex. K. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 20.     The asserted claims in the '044 Patent broadly describe "[a] method for making a fabric . . . having a ground made of yarn, having spaces disposed therein . . .." | '044 Patent, col. 6 ln. 64-67 (Brookey Decl. Ex. C). |
| 21.     The only "ground" described anywhere in the application that matured into the '601 Patent is one created by weaving, and the only method for creating a blanket disclosed in the application is a method for weaving. | '601 Application, at Abstract, p. 1-3, 6, 10-13 and Figs. 6-7 (Brookey Decl. Ex. L). |
| 22.     In the application that matured into the '278 Patent, from which the '044 Patent also claims priority, the only method for creating blankets is weaving, and the application specifically explains that the invention is a method for weaving a blanket. | *See, e.g.*, '278 Application at p. 1-4, 6, 9, 17 (Brookey Decl. Ex. M). |
| 23.     Plaintiff has provided no evidence that a person skilled in the art would extrapolate any other method, such as knitting, from disclosures that only discuss weaving. | Brookey Decl. Exs. G-I. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 24.     The application that matured into the '601 Patent was published September 18, 2003 – more than one year before the November 1, 2004 filing date of the application that matured into the '044 Patent. | Brookey Decl. Exs. A, C. |
| 25.     The specification of the '044 Patent does provide a great deal of specificity with regard to one aspect of the patent:  The specification accurately describes the invention as a method for weaving a blanket and goes into great depth as to how this method may be accomplished by weaving a ground. | *See, e.g.*, '044 Patent, col. 1 ln. 15-18, col. 1 ln. 55-60, col. 2 ln. 7-8, col. 2 ln. 14-16, Fig. 14, col. 3 ln. 32-33, col. 4 ln. 15 (Brookey Dec. Ex. C). |
| 26.     The method of inserting the piles into the ground is also repeatedly described as "weaving" in the '044 Patent. | *See, e.g.*, '044 Patent, col. 4 ln. 66-67, col. 5 ln. 10-13, col. 13-15 (Brookey Decl. Ex. C). |
| 27.     There are a number of distinct methods of manufacturing a fabric with piles, some of which may be compatible with the invention claimed by the '044 Patent, and some of which are not. | Varley Decl. ¶ 11. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 28.    Each accused product was manufactured using a process called "Raschel knitting." | Varley Decl. ¶ 6. |
| 29.    While woven fabrics are composed of warp (vertical) yarns and weft (horizontal yarns) that are interlaced at right angles to each other on a loom, knitted fabrics are composed of intermeshed loops of individual yarns. | Varley Decl. ¶¶ 9-10. |
| 30.    Raschel knitted pile fabrics are made on latch needle flat knitting machines which interconnect the vertical stitches (loops), which are also known as pillar stitches, by inserting "laid in yarns."  The "laid in yarns" anchor the pile yarns, which are incorporated by adding an additional yarn source to the basic fabric structure. The result is a fabric consisting of repeated, intermeshed loops of yarn. | Varley Decl. ¶ 10. |
| 31.    The differences between weaving and Raschel knitting are reflected in the physical forms of the two fabrics. | Varley Decl. Exs. B and C. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 32.     The differences are also reflected in the performance of the two fabrics. For instance, knitted fabrics are more flexible and pliable than similar weights of woven fabrics.  Woven fabrics, on the other hand, are more rigid and stable and are limited in stretch to the bias direction. | Varley Decl. ¶ 11. |
| 33.     Weaving and knitting result in completely different fabric types created by two entirely different processes. | Varley Decl. ¶ 8. |
| 34.     A photomicrographic analysis of a sample of each of the accused products in this action revealed that the blankets were manufactured by Racschel knitting, and could not have been woven. | Varley Decl. ¶¶ 6, 12-13, 15-36 and Exs. D-X. |
| 35.     All three independent claims of the '601 Patent require a "weight percentage of the acrylic yarn in the fabric [to be] in the range between approximately eighty (80) and ninety-five (95) [percent] . . .." | '601 Patent at col. 4 lns. 58-60, col. 5 lns. 15-17, col. 6 lns. 12-14 (Brookey Decl. Ex. A). |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 36.     Two of the accused products – namely, the "Mario Baby Blanket" by J.J.P. Inc. and the "Koyo Blanket" by American Jiamei Textile – both contain less than 80% acrylic fiber. | Varley Decl. ¶¶ 24, 30-32 and Exs. D, M, S-T. |
| 37.     The '278 Patent contains one independent claim (Claim 1) from which all other claims in the patent depend.  That claim requires "the weight percentage of the pile threads in each of the fabrics [to be] in the, [sic] range between approximately eighty-five (85) and ninety-five (95) [percent] . . .." | '278 Patent col. 6 lns. 54-56 (Brookey Decl. Ex. B). |
| 38.     With only three exceptions – the "Pink Panther Polka Dot Blanket" by Lee Yunn Enterprises, Inc., the "Aroma Baby Blanket" by American Jiamei Textile, and the "Aroma Bug Hunting Blanket" by Chung's Appliance, Inc. – none of the nineteen accused products contain acrylic fiber content within this range. | Varley Decl. ¶¶ 16-36 and Exs. D-X. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 39.     Dependent claims 15 and 16 of the '278 Patent require acrylic content between 87-95% and 90-95%, respectively. | '278 Patent at col. 8 lns. 12-21 (Brookey Decl Ex. B). |
| 40.     None of the accused products have acrylic content within these ranges specified by claims 15 and 16 of the '278 Patent. | Varley Decl. ¶¶ 16-36 and Exs. D-X. |
| 41.     The only two independent claims in the '044 Patent (Claims 1 and 9) both require acrylic content greater than 80%. | '044 Patent at col. 7 lns. 5-6, col. 8 lns. 12-13 (Brookey Decl. Ex. C). |
| 42.     Two of the accused products – namely, the "Mario Baby Blanket" by J.J.P. Inc. and the "Koyo Blanket" by American Jiamei Textile – both contain less than 80% acrylic fiber. | Varley Decl. ¶¶ 24, 30-32 and Exs. D, M, S-T. |
| 43.     Plaintiff has not affirmatively relied on the doctrine of equivalents in any of its discovery responses. | Brookey Decl. Exs. G-I. |

CHRISTIE, PARKER & HALE, LLP

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 44.    Plaintiff has not produced any evidence that would support any argument that the differences between the claimed processes and products and the actual accused products and manufacturing methods are "insubstantial." | Brookey Decl. Exs. G-I. |

## **CONCLUSIONS OF LAW**

1.    Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

2.    A party moving for summary judgment can satisfy its initial burden of establishing its right to judgment by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325.

3.    Once the moving party has met this initial burden, the burden shifts to the opposing party, which is required to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

4.    In a patent infringement action, a motion for summary judgment "requires a two-step analytical approach.  First, the claims of the patent must be construed to determine their scope. . . . Second, a determination must be made as to whether the properly construed claims read on the accused device." *Pitney Bowes, Inc., v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) (citing *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)).

5.    Because the patentee bears the ultimate burden of proving

CHRISTIE, PARKER & HALE, LLP

infringement, "an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001) (citation omitted).

6.     Summary judgment of non-infringement is appropriate where the claims do not "read on" the accused [device] that is, where there is no literal infringement. *See Townsend Engineering Co. v. HiTec Co., Ltd.,* 829 F.2d 1086, 1089 (Fed. Cir. 1987) (citation omitted).

7.     Where the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment. *Digital Biometrics, Inc. v. Identix, Inc.* 149 F.3d 1335, 1349 (Fed. Cir. 1998) (*citing Warner Jenkinson v. Hilton Davis Chem. Co.*, 117 S. Ct. 1040, 1053 n.8 (1997)).

8.     The claims asserted in this action in the '601 Patent, the '278 Patent, and the '044 Patent are all either method claims or product-by-process claims.

9.     A patentee charging literal infringement of a product-by-process claim must prove that every step in the claimed method was precisely followed by the defendant. *Abbott Laboratories v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed. Cir. 2009).

10.     "One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *See*, *e.g., Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) (citation omitted).

11.     Plaintiff has offered no evidence that any of the accused products infringe any of the asserted claims in the patents in suit.

12.     The words of a claim are generally given their ordinary and

CHRISTIE, PARKER & HALE, LLP

customary meaning.  The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.  *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006).

13.    The person of ordinary skill in the art is deemed to have reviewed not only the claims of the patent, but the patent specification and its prosecution history.  *Id.* at 1313.

14.    The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314.  Claims must be read in view of the specification.  *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996)).

15.    A court should also consider the patent's prosecution history, if it is in evidence.  *Id.* at 1317 (quoting *Markman,* 52 F.3d at 980).

16.    All of the claims in the '601 Patent and in the '278 Patent require weaving to the exclusion of all other manufacturing processes.

17.    This court may reach a narrower construction, limited to the embodiment(s) disclosed in the specification, when the claims themselves, the specification, or the prosecution history clearly indicate that the invention encompasses no more than that confined structure or method.  *Sandoz*, 566 F.3d at 1288 (citing *Libel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004)).

18.    Whenever possible, the court interpreting a patent claim must choose an interpretation of the claim that does not render the claim invalid under any of the requirements of the patent statute.  *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); *Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 937 n.5 (Fed. Cir. 1983).

19.    The written description requirement necessitates that:    "The specification shall contain a **written description of the invention**, and of the

-14-

manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."  35 U.S.C. § 112, ¶ 1 (emphasis added).

20.   Courts have repeatedly reaffirmed that "there is a description of the invention requirement . . . separate and distinct from the enablement requirement" that applies to all inventions.  *In re Barker*, 559 F.2d 588, 591 (C.C.P.A. 1977) (citations omitted), *cert. denied*, 434 U.S. 1064 (1978).

21.   "Satisfaction of the description requirement insures that subject matter presented in the form of a claim subsequent to the filing date of the application was sufficiently disclosed at the time of filing so that the prima facie date of invention can fairly be held to be the filing date of the application."  *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991) (quoting *In re Smith*, 481 F.2d 910, 914 (C.C.P.A. 1973)).

22.   Whether the written description requirement has been met is determined based on whether the disclosure of the application "reasonably conveys to a person skilled in the art that the inventor had possession of the claimed subject matter" at the time of the filing date.  *Eiselstein v. Frank*, 52 F.3d 1035, 1039 (Fed. Cir. 1995) (citation omitted).   This test is based on the application as it was originally filed and not as it may have been later amended.  *Id.*   Thus, if the final claims in a patent are not supported by the written description in the original application as it was filed, then those claims fail this test and the patent is invalid as a matter of law.  *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479-80 (Fed. Cir. 1998) (invalidating amended claims not supported by the original application); *see also TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119-1120 (Fed. Cir. 2001).

-15-

23.    When a patent issues as a continuation from a parent application – as is the case here – the Court looks to the parent application to determine whether the disclosure in that application supports the claims in the continuation patent. *See Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999).

24.    Precisely how close the original description must come to the claims to comply with this requirement must be determined on a case-by-case basis. *Eiselstein*, 52 F.3d at 1039.

25.    The '044 Patent claims priority from and is a continuation of the '278 Patent, which claims priority from and is a continuation-in-part of the '601 Patent. The '044 Patent also claims priority and is a continuation of the '601 Patent.

26.    All of the '044 Patent's claims were added during prosecution of the '044 Patent and therefore were not themselves present in either parent application.

27.    Any interpretation of the claims of the '044 Patent that includes subject matter other than weaving would render the claims invalid under the written description requirement.  The asserted claims in the '044 Patent therefore all require weaving to the exclusion of all other manufacturing processes.

28.    Even if the '044 Patent's failing the written description requirement only caused the patent to lose its priority date, the '044 Patent's claims would be invalid as anticipated under Section 102(b) because the '601 Patent application was published more than one year before the '044 Patent application was filed.

29.    The Patent Act requires claims to be "definite," such that they "particularly point out and distinctly claim[] the subject matter which the applicant regards as his invention."  35 U.S.C. § 112 ¶ 2.

30.    For a claim to satisfy this requirement and thus not be invalid as indefinite, it must be written such that a person of ordinary skill in the art can interpret the metes and bounds of the claim so as to understand how to avoid infringement.  MPEP § 2173.02 (citing *Morton Int'l, Inc. v. Cardinal Chem. Co.,*

-16-

5 F.3d 1464, 1470 (Fed. Cir. 1993)).

31.    The test for definiteness is whether "those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986).

32.    If a claim "remains insolubly ambiguous without a discernible meaning after all reasonable attempts at construction," it must be deemed indefinite. *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1366 (Fed. Cir. 2004).    "Sometimes the specification offers practically incontrovertible directions about claim meaning." *Sandoz*, 566 F.3d at 1288.

33.    The express language of the '044 Patent's specification demonstrates that there is only one possible "discernable meaning" of the patent, and provides "practically incontrovertible directions" to construe the patent's claims as requiring weaving.    Any other construction would be unsupported by the specification, and would render the '044 Patent invalid.    All of the asserted claims of the '044 Patent therefore require weaving to the exclusion of all other manufacturing processes.

34.    All of the accused products are knit and not woven, and as a result, none of them literally infringe any of the claims of the patents in suit.

35.    All three patents contain independent claims that require specific ranges of the weight percentage of acrylic yarns in the fabric.

36.    All three independent claims of the '601 Patent require a weight percentage of the acrylic yarn in the fabric to be in the range between approximately eighty and ninety-five percent.    Two of the accused products – namely, the "Mario Baby Blanket" by J.J.P. Inc. and the "Koyo Blanket" by American Jiamei Textile – both contain less than 80% acrylic fiber.    Because neither of these two products infringe any of the three independent claims of the '601 Patent, they cannot infringe the '601 Patent.    *See*, *e.g., Wahpeton Canvas*

*Co.*, 870 F.2d at 1552 n.9 (citation omitted) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim").

37.   The '278 Patent contains one independent claim (Claim 1) from which all other claims in the patent depend.  That claim requires the weight percentage of the pile threads in each of the fabrics to be in the range between approximately eighty-five and ninety-five percent.  With only three exceptions – the "Pink Panther Polka Dot Blanket" by Lee Yunn Enterprises, Inc., the "Aroma Baby Blanket" by American Jiamei Textile, and the "Aroma Bug Hunting Blanket" by Chung's Appliance, Inc. – none of the nineteen accused products contain acrylic fiber content within this range.  As a result, the remaining sixteen of the nineteen accused products cannot infringe the '278 Patent.

38.   Dependent claims 15 and 16 of the '278 Patent require acrylic content between 87-95% and 90-95%, respectively.

39.   None of the accused products have acrylic content within these ranges, and therefore none of those products can infringe those two claims.

40.   The only two independent claims in the '044 Patent (Claims 1 and 9) both require acrylic content greater than 80%.

41.   Two of the accused products – namely, the "Mario Baby Blanket" by J.J.P. Inc. and the "Koyo Blanket" by American Jiamei Textile – both contain less than 80% acrylic fiber.  Because neither of these two products infringe either of the two independent claims of the '044 Patent, they cannot infringe the '044 Patent.

42.   "Infringement analysis under the doctrine of equivalents proceeds element-by-element; a generalized showing of equivalency between the claim as a whole and the allegedly infringing product or process is not sufficient to show infringement.  *Sandoz*, 566 F.3d at 1296 (citing *Warner-Jenkinson*, 520 U.S. at 29).

CHRISTIE, PARKER & HALE, LLP

43.    "The primary test for equivalency is the 'function-way-result' or 'triple identity' test," which requires the patentee to show that "the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as disclosed in the claim." *Id.* at 1296-97 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

44.    The triple identity test is not, however, the only test for equivalency; "[e]quivalency may also be proven where the differences between the invention as claimed and the accused product or process are insubstantial." *Id.* at 1297 (citing *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1517-18 (Fed. Cir. 1995) (en banc), *rev'd on other grounds*, 520 U.S. 17 (1997)).

45.    "In no case, however, may the doctrine of equivalents ignore the individual claim elements." *Id.* (citation omitted).

46.    Thus, "the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation." *Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005) (quoting *Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005)).

47.    Plaintiff has not affirmatively relied on the doctrine of equivalents in any of its discovery responses. *See Wechsler v. Hunt Health Sys.*, 1999 U.S. Dist. LEXIS 13216 at *5 (S.D.N.Y. 1997) (responses to contention interrogatories are treated as "judicial admissions" that estop the responding party from asserting positions omitted or different from those responses); *see also*, *Nike Inc. v. Wolverine World Wide, Inc.,* 43 F. 3d 644, 649 (Fed Cir. 1994).

48.    Plaintiff has not produced any evidence that would support any argument that the differences between the claimed processes and products and the actual accused products and manufacturing methods are "insubstantial."

49.    Any product created by knitting – including the accused products – would vitiate the "weaving" claim element of the patents in suit.  Products created

1  by knitting therefore cannot be equivalents to the inventions claimed in the
2  patents in suit.

3      50.    Even if Plaintiff had not waived the right to assert the doctrine of
4  equivalents, it could not raise a triable issue of material fact supporting any claim
5  of infringement under that doctrine.  As a result, none of the accused products
6  infringe any of the patents in suit under the doctrine of equivalents.

7      The Court determines that these facts are supported by the evidence. (R)

10  Dated: __November 04, 2009___

11  _____
12      HON. MANUEL L. REAL
       UNITED STATES DISTRICT JUDGE

15      SES PAS868695.1-*-09/28/09 5:01 PM

CHRISTIE, PARKER & HALE, LLP