Martin Jerisat
martin@thinkingip.com
LAW OFFICE OF MARTIN JERISAT
10 S. LaSalle Street, Suite 3300
Chicago, IL 60603
(312) 332-0333
F: (312) 332-1811

Lawrence E. Thompson
ILIPCounselor@comcast.net
THE THOMPSON LAW OFFICE, P.C.
831 S. State Street
Lockport, IL 60441
(815) 838-6033
F: (815) 828-0661

Attorneys for Defendant,
ALKAM HOME FASHION, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL INTELLECTUAL MANAGEMENT CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LEE YUNN ENTERPRISES, INC. (U.S.A.), a California corporation; et al.,<br><br>Defendants. | Case No. CV 08-7587 R (JWJx)<br><br>**STATEMENT OF FACTS AND CONCLUSIONS OF LAW IN REGARD TO DEFENDANT ALKAM HOME FASHION, INC.**<br><br>Hon. Manuel L. Real |

Law Office of Martin Jerisat

Having read and considered the papers, arguments, and evidence presented by the parties with respect to the Motion for Entry of Stipulated Judgment in Regard to Alkam Home Fashion, Inc.; and

Having read and considered the papers, arguments, and evidence presented by the parties with respect to the Motion for Summary Judgment filed by Alkam Home Fashion's codefendants; and

The Court finds that the following facts are undisputed and makes the following conclusions of law:

### MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE

| Uncontroverted Fact | Supporting Evidence |
|---|---|
| 1. Plaintiff is the assignee of three patents: U.S. Patent Nos. 6,647,601 (the "'601 Patent"); 6,837,278 (the "'278 Patent"); and 6,926,044 (the "'044 Patent") (collectively, the "patents in suit"). | First Amended Complaint ("FAC") ¶¶ 23-26 and Exs. A-C; Declaration of Brian K. Brookey ("Brookey Decl.") Exs. A-F. |
| 2. The patents contain two types of claims: method claims (independent and dependent) for manufacturing blankets; and product-by-process claims with respect to the blankets themselves. | FAC Exs. A-C; Brookey Decl. Exs. AC. |
| 2A. Plaintiff has indicated that the accused products (a/k/a the "Accused Blankets") in regard to Alkam Home Fashion consist of those shown in Exhibit F to the First Amended | Declaration of Lawrence E. Thompson ("Thompson Decl.") |

1

Law Office of Martin Jerisat

Case 2:08-cv-07587-R-JWJ   Document 186   Filed 12/21/09   Page 3 of 16   Page ID #:2159

| | |
|---|---|
| 1. Complaint (Document No. 10-2), and that shown in documents marked IIMC 000236 and 000252. | |
| 3. Plaintiff has offered no evidence that any of the accused products infringe any of the claims of the patents in suit. | Brookey Decl. Exs. G-I. Thompson Decl. |
| 4. Plaintiff has offered no evidence that any defendant used the methods claimed in the patents in suit. | Brookey Decl. Exs. G-I. Thompson Decl. |
| 5. Claim 1 of the '601 Patent claims a method for making a fabric that includes, among other things, the step of "weaving the fabric." | Brookey Decl. Ex. A. |
| 6. Claims 2 through 6 of the '601 Patent are dependent claims and thus also must require weaving. | Brookey Decl. Ex. A. |
| 7. Claim 7 of the '601 Patent is a product-by-process claim that requires "weaving the fabric," and Claims 8 through 11 depend from it. | Brookey Decl. Ex. A. |
| 8. Claim 12 of the '601 Patent is a method claim requiring "weaving the fabric," and Claims 13 through 16 depend from it. | Brookey Decl. Ex. A. |
| 9. Claim 17 of the '601 Patent is a product-by-process claim for a blanket | Brookey Decl. Ex. A. |

2

| | |
|---|---|
| made according the method of Claim 12. | |
| 10. The '278 patent contains method and product-by-process claims, all of which, as in the '601 Patent, require the step of "weaving" fabric. | '278 Patent, Claims 1-11, 13, 15-16 (method claims); Claims 12, 14 (product-by-process claims) (Brookey Decl. Ex. B). |
| 11. The term "weave" is defined as follows: "To make (cloth) by interlacing the threads of the weft and the warp on a loom...To interlace (threads, for example) into cloth...To construct by interlacing or interweaving strips or strands of material." | The American Heritage Dictionary of the English Language, 4th ed. 2009 (Brookey Decl. Ex. J). |
| 12. It is well known to those of ordinary skill in the art that "weaving" refers to a specific Standard Industrial Classification (SIC) designation for creating fabric that differs from other processes for creating fabric, such as knitting. | Declaration of Gerald M. Varley ("Varley Decl.") ¶ 7. |
| 13. Weaving involves distinct mechanical principals, particular machinery, and particular training and skills that are unrelated to other methods of fabric manufacturing. | Varley Decl. ¶ 7. |
| 14. Woven fabrics are composed of warp (vertical) yarns and weft | Varley Decl. ¶ 9 and Ex. B |

3

| | | |
|---|---|---|
| 1<br>2 | (horizontal yarns) that are interlaced at right angles to each other on a loom. | |
| 3<br>4<br>5<br>6<br>7 | 15. Piles may be inserted in the spaces between the warps and wefts of woven fabrics to create plusher fabrics. A pile yarn is wound around a ground yarn by one or more turns. | Varley Decl. ¶ 9. |
| 8<br>9 | 16. Weaving results in a specific structural configuration. | Varley Decl. Ex. B. |
| 10<br>11<br>12<br>13<br>14<br>15 | 17. This configuration described in ¶¶ 14-16 is what is described by the '601 Patent's and the '278 Patent's specifications when they discuss weaving, and it is the structure shown in the patents' figures. | *See, e.g.,* '601 Patent at col 1. lns. 36-44 and at Figs. 4-5; '278 Patent at col. 2. lns. 1-5 and at Fig. 12. |
| 16<br>17<br>18<br>19<br>20<br>21<br>22 | 18. The '044 Patent claims priority from and is a continuation of the '278 Patent, which claims priority from and is a continuation-in-part of the '601 Patent. The '044 Patent also claims priority and is a continuation of the '601 Patent. | Brookey Decl. Exs. A-C. |
| 23<br>24<br>25<br>26<br>27 | 19. All of the '044 Patent's claims were added during prosecution of the '044 Patent and therefore were not themselves present in either parent application. | Brookey Decl. Ex. K. |

28

4

Law Office of Martin Jerisat

| | |
|---|---|
| 20. The asserted claims in the '044 Patent broadly describe "[a] method for making a fabric . . . having a ground made of yarn, having spaces disposed therein . . . ." | '044 Patent, col. 6 ln. 64-67 (Brookey Decl. Ex. C). |
| 21. The only "ground" described anywhere in the application that matured into the '601 Patent is one created by weaving, and the only method for creating a blanket disclosed in the application is a method for weaving. | '601 Application, at Abstract, p. 1-3, 6, 10-13 and Figs. 6-7 (Brookey Decl. Ex. L). |
| 22. In the application that matured into the '278 Patent, from which the '044 Patent also claims priority, the only method for creating blankets is weaving, and the application specifically explains that the invention is a method for weaving a blanket. | *See, e.g.*, '278 Application at p. 1-4, 6, 9, 17 (Brookey Decl. Ex. M). |
| 23. Plaintiff has provided no evidence that a person skilled in the art would extrapolate any other method, such as knitting, from disclosures that only discuss weaving. | Brookey Decl. Exs. G-I. |
| 24. The application that matured into the '601 Patent was published September 18, 2003 – more than one | Brookey Decl. Exs. A, C. |

5

| | | |
|---|---|---|
| 1<br>2<br>3 | year before the November 1, 2004 filing date of the application that matured into the '044 Patent. | |
| 4<br>5<br>6<br>7<br>8<br>9<br>10<br>11 | 25. The specification of the '044 Patent does provide a great deal of specificity with regard to one aspect of the patent: The specification accurately describes the invention as a method for weaving a blanket and goes into great depth as to how this method may be accomplished by weaving a ground. | *See, e.g.,* '044 Patent, col. 1 ln. 15-18, col. 1 ln. 55-60, col. 2 ln. 7-8, col. 2 ln. 14-16, Fig. 14, col. 3 ln. 32-33, col. 4 ln. 15 (Brookey Dec. Ex. C). |
| 12<br>13<br>14<br>15 | 26. The method of inserting the piles into the ground is also repeatedly described as "weaving" in the '044 Patent. | *See, e.g.,* '044 Patent, col. 4 ln. 66-67, col. 5 ln. 10-13, col. 13-15 (Brookey Decl. Ex. C). |
| 16<br>17<br>18<br>19<br>20<br>21 | 27. There are a number of distinct methods of manufacturing a fabric with piles, some of which may be compatible with the invention claimed by the '044 Patent, and some of which are not. | Varley Decl. ¶ 11. |
| 22<br>23<br>24 | 28. Each accused product was manufactured using a process called "Raschel knitting." | Varley Decl. ¶ 6.<br>Thompson Decl. |
| 25<br>26<br>27 | 29. While woven fabrics are composed of warp (vertical) yarns and weft (horizontal yarns) that are | Varley Decl. ¶¶ 9-10. |

28

6

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | interlaced at right angles to each other on a loom, knitted fabrics are composed of intermeshed loops of individual yarns. | |
| 5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14<br>15 | 30. Raschel knitted pile fabrics are made on latch needle flat knitting machines which interconnect the vertical stitches (loops), which are also known as pillar stitches, by inserting "laid in yarns." The "laid in yarns" anchor the pile yarns, which are incorporated by adding an additional yarn source to the basic fabric structure. The result is a fabric consisting of repeated, intermeshed loops of yarn. | Varley Decl. ¶ 10. |
| 16<br>17<br>18 | 31. The differences between weaving and Raschel knitting are reflected in the physical forms of the two fabrics. | Varley Decl. Exs. B and C. |
| 19<br>20<br>21<br>22<br>23<br>24<br>25<br>26 | 32. The differences are also reflected in the performance of the two fabrics. For instance, knitted fabrics are more flexible and pliable than similar weights of woven fabrics. Woven fabrics, on the other hand, are more rigid and stable and are limited in stretch to the bias direction. | Varley Decl. ¶ 11. |
| 27<br>28 | 33. Weaving and knitting result in | Varley Decl. ¶ 8. |

7

Law Office of Martin Jerisat

| | |
|---|---|
| completely different fabric types created by two entirely different processes. | |
| 34. A photomicrographic analysis of a sample of each of the accused products in this action revealed that the blankets were manufactured by Racschel knitting, and could not have been woven. | Varley Decl. ¶¶ 6, 12-13, 15-36 and Exs. D-X. |
| 35-42. NOT USED. | |
| 43. Plaintiff has not affirmatively relied on the doctrine of equivalents in any of its discovery responses. | Brookey Decl. Exs. G-I. Thompson, Decl. |
| 44. Plaintiff has not produced any evidence that would support any argument that the differences between the claimed processes and products and the actual accused products and manufacturing methods are "insubstantial." | Brookey Decl. Exs. G-I. Thompson, Decl. |

## CONCLUSIONS OF LAW

1A. Alkam Home Fashion, Inc., and International Intellectual Property Corporation have stipulated that the Conclusions of Law as stated in the Statement of Uncontroverted Facts and Conclusions of Law (Document No. 150, entered on 11/04/09) are applicable in regard to Alkam Home Fashion, Inc., to the same extent that they are applicable to Alkam Home Fashion's codefendants.

1B. The Federal Circuit has recognized that parties may enter stipulated

8

judgments after claims have been construed. *Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1334 (Fed. Cir. 2008).

1-7.   NOT USED.

8.   The claims asserted in this action in the '601 Patent, the '278 Patent, and the '044 Patent include method claims and product-by-process claims.

9.   A patentee charging literal infringement of a product-by-process claim must prove that every step in the claimed method was precisely followed by the defendant. *Abbott Laboratories v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed. Cir. 2009).

10.   "One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *See, e.g., Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) (citation omitted).

11.   Taking into consideration the construction of the claims as determined by the Court, Plaintiff has offered no evidence that any of the Alkam Fashion accused products infringe any of the asserted claims in the patent in suit.

12.   The words of a claim are generally given their ordinary and customary meaning. The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1170 (2006).

13.   The person of ordinary skill in the art is deemed to have reviewed not only the claims of the patent, but the patent specification and its prosecution history. *Id.* at 1313.

14.   The claims themselves provide substantial guidance as to the meaning of particular claim terms. *Id.* at 1314. Claims must be read in view of the specification. *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52

F.3d 967, 979 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996)).

15. A court should also consider the patent's prosecution history, if it is in evidence. *Id.* at 1317 (quoting *Markman*, 52 F.3d at 980).

16. All of the claims of the '601 Patent and in the '278 Patent require weaving to the exclusion of all other manufacturing processes.

17. This Court may reach a narrower construction, limited to the embodiment(s) disclosed in the specification, when the claims themselves, the specification, or the prosecution history clearly indicate that the invention encompasses no more than that confined structure or method. *Sandoz*, 566 F.3d at 1288 (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004)).

18. Whenever possible, the court interpreting a patent claim must choose an interpretation of the claim that does not render the claim invalid under any of the requirements of the patent statute. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999); *Carman Indus., Inc. v. Wahl*, 724 F.2d 932, 937 n.5 (Fed. Cir. 1983).

19. The written description requirement necessitates that: "The specification shall contain a **written description of the invention**, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112, ¶ 1 (emphasis added).

20. Courts have repeatedly reaffirmed that "there is a description of the invention requirement . . . separate and distinct from the enablement requirement" that applies to all inventions. *In re Barker*, 559 F.2d 588, 591 (C.C.P.A. 1977) (citations omitted), *cert. denied*, 434 U.S. 1064 (1978).

10

21. "Satisfaction of the description requirement insures that subject matter presented in the form of a claim subsequent to the filing date of the application was sufficiently disclosed at the time of filing so that the prima facie date of invention can fairly be held to be the filing date of the application." *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1562 (Fed. Cir. 1991) (quoting *In re Smith*, 481 F.2d 910, 914 (C.C.P.A. 1973)).

22. Whether the written description requirement has been met is determined based on whether the disclosure of the application "reasonably conveys to a person skilled in the art that the inventor had possession of the claimed subject matter" at the time of the filing date. *Eiselstein v. Frank*, 52 F.3d 1035, 1039 (Fed. Cir. 1995) (citation omitted). This test is based on the application as it was originally filed and not as it may have been later amended. *Id.* Thus, if the final claims in a patent are not supported by the written description in the original application as it was filed, then those claims fail this test and the patent is invalid as a matter of law. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479-80 (Fed. Cir. 1998) (invalidating amended claims not supported by the original application); see also *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1119-1120 (Fed. Cir. 2001).

23. When a patent issues as a continuation from a parent application – as is the case here - the Court looks to the parent application to determine whether the disclosure in that application supports the claims in the continuation patent. *See Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999).

24. Precisely how close the original description must come to the claims to comply with this requirement must be determined on a case-by-case basis. *Eiselstein*, 52 F.3d at 1039.

11

Law Office of Martin Jerisat

25. The '044 Patent claims priority from and is a continuation of the '278 Patent, which claims priority from and is a continuation-in-part of the '601 Patent. The '044 Patent also claims priority from and is a continuation of the '601 Patent.

26. All of the '044 Patent's claims were added during prosecution of the '044 Patent and therefore were not themselves present in either parent application.

27. Any interpretation of the claims of the '044 Patent that includes subject matter other than weaving would render the claims invalid under the written description requirement. The asserted claims in the '044 Patent therefore all require weaving to the exclusion of all other manufacturing processes.

28. Even if the '044 Patent's failing the written description requirement only caused the patent to lose its priority date, the '044 Patent's claims would be invalid as anticipated under Section 102(b) because the '601 Patent application was published more than one year before the '044 Patent application was filed.

29. The Patent Act requires claims to be "definite," such that they "particularly point out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2.

30. For a claim to satisfy this requirement and thus not be invalid as indefinite, it must be written such that a person of ordinary skill in the art can interpret the metes and bounds of the claim so as to understand how to avoid infringement. MPEP § 2173.02 (citing *Morton Int'l, Inc. v, Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993)).

31. The test for definiteness is whether "those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986).

32. If a claim "remains insolubly ambiguous without a discernible meaning after all reasonable attempts at construction," it must be deemed indefinite. *Metabolite Labs., Inc. v. Lab. Corp, of Am. Holdings*, 370 F.3d 1354, 1366 (Fed. Cir. 2004). "Sometimes the specification offers practically incontrovertible directions about claim meaning." *Sandoz*, 566 F.3d at 1288.

33. The express language of the '044 Patent's specification demonstrates that there is only one possible "discernable meaning" of the patent, and provides "practically incontrovertible directions" to construe the patent's claims as requiring weaving. Any other construction would be unsupported by the specification, and would render the '044 Patent invalid. All of the asserted claims of the '044 Patent therefore require weaving to the exclusion of all other manufacturing processes.

34. All of the accused products are knit and not woven, and as a result, none of them literally infringe any of the claims of the patents in suit.

35-41. NOT USED.

42. "Infringement analysis under the doctrine of equivalents proceeds element-by-element; a generalized showing of equivalency between the claim as a whole and the allegedly infringing product or process is not sufficient to show infringement. Sandoz, 566 F.3d at 1296 (citing *Warner-Jenkinson*, 520 U.S. at 29).

43. "The primary test for equivalency is the 'function-way-result' or 'triple identity' test," which requires the patentee to show that "the accused product or process performs substantially the same function, in substantially the same way, to achieve substantially the same result as disclosed in the claim." *Id.* at 1296-97 (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

44. The triple identity test is not, however, the only test for equivalency;

13

"[e]quivalency may also be proven where the differences between the invention as claimed and the accused product or process are insubstantial." *Id.* at 1297 (citing *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1517-18 (Fed. Cir. 1995) (en banc), *rev'd on other grounds*, 520 U.S. 17 (1997)).

45. "In no case, however, may the doctrine of equivalents ignore the individual claim elements." *Id.* (citation omitted).

46. Thus, "the doctrine of equivalents does not apply if applying the doctrine would vitiate an entire claim limitation." *Seachange Int'l, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005) (quoting A*syst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005)).

47. Plaintiff has not affirmatively relied on the doctrine of equivalents in any of its discovery responses. *See Wechsler v. Hunt Health Sys.*, 1999 U.S. Dist. LEXIS 13216 at *5 (S.D.N.Y. 1997) (responses to contention interrogatories are treated as "judicial admissions" that estop the responding party from asserting positions omitted or different from those responses); *see also, Nike Inc. v. Wolverine World Wide, Inc.*, 43 F. 3d 644, 649 (Fed Cir. 1994).

48. Plaintiff has not produced any evidence that would support any argument that the differences between the claimed processes and products and the actual accused products and manufacturing methods are "insubstantial."

49. Any product created by knitting – including the accused products – would vitiate the "weaving" claim element of the patents in suit. Products created by knitting therefore cannot be equivalents to the inventions claimed in the patents in suit.

50. Even if Plaintiff had not waived the right to assert the doctrine of equivalents, it could not raise a triable issue of material fact supporting any claim of infringement under that doctrine. As a result, none of the Alkam Home Fashion accused products infringe any of the patents in suit under the doctrine of

14

1 | equivalents.

3 | The Court determines that these facts are supported by the evidence.

5 | DATED: __Dec. 21__, 2009

_____
HON. MANUEL L. REAL
U.S. DISTRICT COURT JUDGE

AGREED TO BY:

For: Defendant ALKAM HOME FASHION, INC.

LAW OFFICE OF MARTIN JERISAT
By __/s/ Martin Jerisat__
      Martin Jerisat

For: Plaintiff INTERNATIONAL INTELLECTUAL MANAGEMENT CORPORATION

PARK LAW OFFICE
By __/s/ Chong H. Roh__
      Chong H. Roh

15